John C. Fish, Jr., Bar No. 160620
jfish@littler.com
Courtney Chambers, Bar No. 312011
cchambers@littler.com
Emily Mertes, Bar No. 296743
emertes@littler.com
LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
Telephone: 415.433.1940
Facsimile: 415.399.8490

Attorneys For Defendant
SAN FRANCISCO BASEBALL
ASSOCIATES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALLAN SWEARINGTON, individually, and on behalf of other similarly situated employees,

Plaintiff,

v.

SAN FRANCISCO BASEBALL ASSOCIATES LLC; and DOES 1 through 25, inclusive,

Defendants.

Case No.

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

Complaint Filed: April 21, 2025

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF ALLAN SWEARINGTON:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446, Defendant SAN FRANCISCO BASEBALL ASSOCIATES LLC ("Defendant" or "SFBA") hereby removes the above-captioned action from the Superior Court for the State of California, in and for the County of San Francisco to the United States District Court, Northern District of California.

Removal is proper based on 29 U.S.C. § 185(a). This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1446(d), Defendant will also file a copy of this Notice of Removal with the San Francisco Superior Court.

## I. PROCEDURAL BACKGROUND

On April 21, 2025, Plaintiff Allan Swearington ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of San Francisco, which is captioned as follows: *Allan Swearington, individually, and on behalf of others similarly situated employees v. San Francisco Baseball Associates LLC, and Does 1 through 25, inclusive*, Case No. CGC-25-624594. ("Complaint" or "Compl.") The Complaint contains ten (10) causes of action alleging: (1) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Minimum Wages); (2) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (3) Violation of California Labor Codes §§ 551 and 552 (Failure to Provide One Day's Rest in Seven); (4) Violation of California Labor Code §§ 226.7 and 512(a) (Meal Break Violations); (5) Violation of California Labor Code §§ 226.7 (Rest Break Violations); (7) Violation of California Labor Code §§ 204 and 210 (Wages Not Timely Paid During Employment) (7) Violation of California Labor Code § 226(a) (Wage Statement Violation; (8) Violation of Cal. Labor Code §§ 201, 202, and 203 (Untimely Final Wages); and (9) Violation of California Labor Code §§ 2800 and 2802 (Failure to Reimburse Necessary Business Expenses); and (10) Violation of California Business & Professions Code §§ 17200, *et seq*.

True and correct copies of the Summons, Civil Case Cover Sheet, Complaint, and Proof(s) of Service are attached to the supporting Declaration of Emily Mertes ["Mertes Decl."] as **Exhibit 1**.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

On May 23, 2025, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates that the Court issued an Order Denying Complex Designation. A true and correct copy of the Court's Order is attached to the Mertes Decl. as **Exhibit 2**.

On May 27, 2025, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates that Plaintiff filed an Application for Approval of Complex Litigation Designation. A true and correct copy of the Application and accompanying Proof of Service is attached to the Mertes Decl. as **Exhibit 3**.

On or about May 30, 2025, Defendant filed an Answer to the Complaint in the Superior Court of the State of California, County of San Francisco. A true and correct copy of Defendant's Answer and accompanying Proof of Service is attached to the Mertes Decl. as **Exhibit 4**.

On July 17, 2025, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates that the Court issued an Order approving the Application for Complex Designation and Assignment to Judge Ethan P. Schulman. In its Order, the Court scheduled a Case Management Conference for August 14, 2025. A true and correct copy of the Court's Order is attached to the Mertes Decl. as **Exhibit 5**.

On or about August 6, 2025, Defendant filed a Notice of Change of Address in Superior Court of the State of California, County of San Francisco. A true and correct copy of Defendant's Notice of Change of Address is attached to the Mertes Decl. as **Exhibit 6**.

On or about August 7, 2025, the parties jointly filed a Joint Case Management Conference Statement in Superior Court of the State of California, County of San Francisco. A true and correct copy of the parties' Joint Case Management Conference Statement and accompanying Proof of Service is attached to the Mertes Decl. as **Exhibit 7**.

On August 8, 2025, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates that the Court issued an Order Continuing the August 14, 2025, Initial Case Management Conference to November 19, 2025. A true and correct copy of the Court's Order is attached to the Mertes Decl. as **Exhibit 8**.

On November 12, 2025, the parties jointly filed a Joint Case Management Conference Statement in Superior Court of the State of California, County of San Francisco. A true and correct copy of the

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

parties' Joint Case Management Conference Statement and accompanying Proof of Service is attached to the Mertes Decl. as **Exhibit 9**.

On November 13, 2025, the Superior Court of the State of California, County of San Francisco's Docket in this matter indicates that the Court issued an Order Continuing the November 19, 2025, Initial Case Management Conference to January 23, 2026. A true and correct copy of the Court's Order is attached to the Mertes Decl. as **Exhibit 10**.

As of the date of this Notice of Removal, no other parties have been named or served with the Summons and Complaint, to Defendant's knowledge. (Mertes Decl., ¶ 10.)

## II. REMOVAL JURISDICTION

This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter "Section 301").

Section 301 preemption and jurisdiction apply because the Complaint includes claims that can only be brought as contractual claims under the applicable collective bargaining agreement ("CBA") due to the application of several express CBA exemptions in the California Labor Code and Industrial Welfare Commission ("IWC") Wage Order 10. Section 301 also applies because Plaintiff asserts he is entitled to relief that is controlled by the CBA and makes claims the resolution of which require interpretation of the CBA.

If any claims in the Complaint are not preempted, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy.

## III. REMOVAL PROCEDURE

### A. Venue Is Proper in This District.

Plaintiff filed this action in the Superior Court of California, County of San Francisco. Therefore, pursuant to 28 U.S.C. §§ 84(a), 1391, and 1441(a), venue properly lies in the United States District Court

for the Northern District of California.

**B. This Removal Is Timely.**

28 U.S.C. § 1446(b) provides two 30-day windows for removing a case. Section 1446(b)(1) specifies that a defendant must remove "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If, however, "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

In addition, the Ninth Circuit has held that a defendant may remove "when it discovers, based on its own investigation, that a case is removable." *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1123 (9th Cir. 2013). Thus, the two 30-day periods set forth in section 1446(b) are not the exclusive periods for removal. *Id.* at 1125 ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines."). In short, a case "may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Id.* at 1126; *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable," a defendant, in effect, "may remove at any time.").

To trigger the 30-day removal periods under § 1441(b), the grounds for removal must be evident from the face of the pleadings. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). That is, the determination of removability is based on the "four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* If it is unclear from the complaint whether the case is removable, the pleadings are considered "indeterminate," and the 30-day removal window is not triggered. *Id.* at 693. A "defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth*, *supra*, 720 F.3d at 1125. "Even the simplest of inquiries is not required….[D]efendants are not charged with any investigation, not even into their own records." *Stiren v. Lowes Home Ctrs., LLC*, 2019 U.S. Dist. LEXIS 74656, *709 (C.D.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

Cal. May 2, 2019). Accordingly, "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth*, *supra*, 720 F.3d at 1125; *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018).

Here, Plaintiff's Complaint is clearly indeterminate regarding whether the case is removable under 29 U.S.C. § 185(a). It does not assert that Plaintiff was a member of a Union, and it does not provide any information regarding the Collective Bargaining Agreement that governed his employment. Nor has Plaintiff filed or served any other "pleading, motion, order or other paper" in this matter that revealed on its face that this matter was removable. *See Lainez v. Wilhelm, LLC*, 2024 U.S. Dist. LEXIS 173859 *3, 8-9 (N.D. Cal. Sep. 25, 2024). As Defendant remained free to conduct its own investigation and remove at any time, this removal is timely.

### C. The Failure To Reference The CBA, The LMRA, Or The Union Does Not Preclude Removal Because Plaintiff May Not "Artfully Plead" A Complaint To Conceal Its True Nature.

The failure of Plaintiff's operative pleading to reference the CBA, the Union, or the LMRA is not relevant to the Section 301 preemption analysis. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019); *Radcliff v. San Diego Gas & Elec. Co.*, 519 F.Supp.3d 743, 750 (S.D. Cal. 2021); *Mellon v. Universal City Studios, LLC*, 2022 WL 4021692, 2 (C.D. Cal. Sept. 2, 2022); *Ayon v. Zero Waste Sols., Inc.*, 2021 WL 4065716, 3 (E.D. Cal. Sept. 7, 2021). A plaintiff may not be permitted to "artfully plead" a complaint to conceal its true nature. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009); *IBEW v. Hechler*, 481 U.S. 851 (1987) (state law tort action "treated as Section 301 claim" by the Court); *Hyles v. Mensing*, 849 F. 2d 1213, 1217 (9th Cir. 1988) (preemption affirmed notwithstanding plaintiff's artful omission of references to preemptive federal law); *Olguin v. Inspiration Consol. Copper Co.*,740 F.2d 1468, 1472-74 (9th Cir. 1984) (preemption affirmed despite attempt to plead around federal jurisdiction); *see Milne Emp. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991).

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

An artfully pled state law claim is properly "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "A claim pleaded under state law that requires the interpretation of a collective bargaining agreement is transformed by section 301 of the LMRA into a claim arising under federal law." *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996).

**D. The Parties, The Union, And The Relevant Collective Bargaining Agreement.**

SFBA is an employer engaged in an industry affecting commerce within the meaning of the National Labor Relations Act (the "NLRA"). 29 U.S.C. §§ 152(2), (6), (7), and 185(a). The Service Employees International Union, United Service Workers West ("USWW") (the "Union") is a labor organization under the NLRA and the LMRA. 29 U.S.C. §§ 152(5) and 185(a). At relevant times, SFBA and the Union have been parties to a collective bargaining agreement ("CBA"). A true and correct copy of the CBA in effect during Plaintiff's employment and applicable at all times to Plaintiff's employment is attached to the Declaration of Lan Lee ("Lee Decl.") as **Exhibit A** ("Exh. A"). (*See also* Defendant's Request for Judicial Notice ("RJN") at ¶ 1.) The CBA is effective through December 31, 2026. (Lee Decl., ¶ 5.) A true and correct copy of the CBA in effect from January 1, 2018, to December 31, 2021 ("2018-2021 CBA") is attached to the Lee Decl. as **Exhibit B** ("Exh. B"). (*See also* Defendant's RJN at ¶ 2.)

At all times during his employment, Plaintiff was a union-represented employee and part of the bargaining unit represented by the Union and, therefore, subject to the CBA. (*Id.* at ¶ 4.)

All wage rates, for all job classifications, are set forth in the CBA, in a wage grid at page 19. (Lee Decl., **Exh. A**.) A true and correct copy of wage grid containing the wage rates for all job classifications

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

in effect from January 1, 2018, to December 31, 2021, can found in the 2018-2021 CBA and is attached to the Lee Decl. as **Exhibit B.** (*See also* Defendant's RJN at ¶ 2.)

## IV. FACTUAL BACKGROUND

### A. Plaintiff's Employment.

SFBA employed Plaintiff as a Security Guard from May 11, 2023, to October 16, 2023. (Lee Decl., ¶ 4.) In this position, he was classified within the USSW-represented unit, and his employment was governed by the CBA. (Lee Decl., ¶ 4.) In his role as a Security Guard, Plaintiff's base wage at his time of hire in 2023 under the CBA was $20.70. (*Id.* at ¶ 7.) Plaintiff's base wage rate at the time of his termination in October 2023 under the CBA was $21.70. (*Id.* at ¶ 7.) At all times, Plaintiff's wage rate under the CBA was in excess of 130% of the California minimum wage.

### B. Relevant Collective Bargaining Agreement Provisions.

The term of the CBA that was in effect during all relevant times during Plaintiff's employment was from January 1, 2022, to December 31, 2026. (Lee Decl., ¶ 5.) The provisions of the CBA relevant to this Removal include the following:

#### 1. Wage Rates.

The following are relevant to show that the CBA provides for 130% of minimum wages, and that Plaintiff's overtime claim is subject to the exemption under Labor Code section 514 and preempted by the CBA:

> **Section Nine - Wages**
> The minimum hourly rates of pay which shall pertain during the term of this Agreement are set forth by classification in Exhibit A hereto. The rates for Part-Time Employees are subject to annual adjustment based upon an employee achieving or failing to achieve certain thresholds of work commitment. All Part-Time Employees are required to work a minimum of thirty-one (31) FVEs each calendar year.

(Lee Decl., **Exh. A**, pp. 10-11.)

> **Exhibit A – Wages and Premiums** [Listing Security Guard wages ranging from $20.00 to $32.65 - effective January 1, 2022 and listing futures increases on January 1, 2023, January 1, 2024, January 1, 2024, and January 1, 2025.]

(Lee Decl., **Exh. A**, pp. 19-20.)





LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

At all relevant times, SFBA employees represented by the Union, and therefore whose employment was governed by the CBA, were subject to the wage scales applicable to Security Guards in the CBA that were at all relevant times greater than 130% of the relevant minimum wage:

| Year | Minimum Wage[1] | 130% of minimum wage | CBA lowest hourly wage rate |
|---|---|---|---|
| 2021 | $14.00 | $18.20 | $18.20 |
| 2022 | $15.00 | $19.50 | $20.75 |
| 2023 | $15.50 | $20.15 | $21.25 |
| 2024 | $16.00 | $20.80 | $23.74 |
| 2025 | $16.50 | $21.45 | $24.94 |

(Lee Decl., ¶ 8, **Exh. A** pp. 19-20; *See also* **Exh. B**, pp. 18-20.)

**2. Overtime.**

The CBA specifically calls for overtime premiums:

> **Section Eight - Hours**
> Any work performed in excess of eight (8) hours per day or forty (40) hours per week shall be paid at the rate of time and one-half (1½).

(Lee Decl., **Exh. A**, pp. 9-10.)

**3. Working Hours.**

The CBA specifically calls for working hours:

> **Section Eight - Hours**
> The Employer retains the right to establish what shall constitute a normal workday and to schedule employees at its discretion, provided that if the Employer reduces the number of employees typically used for FVEs such that Part-Time Employees classified at Class 6 through 20 are unable to schedule on a regular basis, the Employer and the Union will meet and confer to discuss the possibility of introducing a seniority based priority scheduling system. Notwithstanding the above, any employee required to work less than four (4) hours shall receive a minimum of four (4) hours pay, except that there shall be no minimum hour requirement with respect to California Guard Card or California PSO Card training, as applicable, or online training performed by an employee. Employees participating in online training will be paid for the reasonable amount of time necessary to complete the required training. Regular Employees required to work less than six (6) hours shall receive a minimum of six (6) hours pay; provided, however, that they shall receive only four (4) hours pay if the work shift is shortened due to the cancellation of a game (i.e., rain, natural disaster, civil unrest) or if the work shift occurs during a strike, lockout or other work stoppage involving the Major League Baseball Players Association, and provided, further, that no minimum hour requirement shall apply with respect to California Guard Card or California PSO Card training or other training performed by an employee online. Employees shall be entitled

[1] For 26 or more employees. (*See* RJN [listing minimum wage rates].)

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

to rest ·breaks as required by law. On a case by case basis, the Employer may, in its discretion, provide employees with disabilities travel time accommodations to and from lunch or a rest break. There is no guarantee for greater than a four (4) hour shift. Sunday through Saturday shall constitute a work week…

(Lee Decl., **Exh. A**, pp. 9-10.)

### 4. Grievance and Arbitration.

The CBA calls for claims to proceed under its own grievance and arbitration provision:

**Section Fourteen - Grievance & Arbitration**

A grievance is any dispute between the Employer and an employee or the Union, regarding the interpretation, application, or alleged violation of any of the terms of this Agreement. Grievances shall be limited to events and occurrences arising during the term of this Agreement or any extension thereto.

[…]

If the parties cannot resolve the grievance, then the grieving party may, by written notice to the other party, request arbitration of the grievance: Failure to request arbitration within ten (10) business days of the Informal Mediation Session shall constitute a waiver of the grievance. The patties shall meet to choose an arbitrator within five (5) business days of the date the request for arbitration is made. In the event the parties are unable to agree upon the selection of an arbitrator, the party seeking arbitration shall obtain a list of seven (7) names from the Federal Mediation and Conciliation Service, from which the patties shall alternatively strike names. The party striking first shall be decided by coin toss. The decision of the arbitrator shall be final and binding on the parties and the employees.

[…]

The cost of the arbitration and the compensation and expenses of the arbitrator shall be borne by the losing party. If there is a dispute as to which party constitutes the losing party for purposes of this section, the matter shall be decided by the arbitrator. Each party shall bear the expense of presenting its own case.

(Lee Decl., **Exh. A**, pp. 14-15.)

### 5. Non-Exhaustive List Of CBA Provisions Governing Other Terms And Conditions of Employment.

The CBA provides for guaranteed pay, show up pay, and expenses, which are relevant to Plaintiff's minimum wage, seventh day rest, and unreimbursed expense claims, among others:

**Section Eight - Hours**

The Employer retains the right to establish what shall constitute a normal workday and to schedule employees at its discretion, provided that if the Employer reduces the number of employees typically used for FVEs such that Part-Time Employees classified at Class 6 through 20 are unable to schedule on a regular basis, the Employer and the Union will meet and confer to discuss the





LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

possibility of introducing a seniority based priority scheduling system. Notwithstanding the above, any employee required to work less than four (4) hours shall receive a minimum of four (4) hours pay, except that there shall be no minimum hour requirement with respect to California Guard Card or California PSO Card training, as applicable, or online training performed by an employee. Employees participating in online training will be paid for the reasonable amount of time necessary to complete the required training. Regular Employees required to work less than six (6) hours shall receive a minimum of six (6) hours pay; provided, however, that they shall receive only four (4) hours pay if the work shift is shortened due to the cancellation of a game (i.e., rain, natural disaster, civil unrest) or if the work shift occurs during a strike, lockout or other work stoppage involving the Major League Baseball Players Association, and provided, further, that no minimum hour requirement shall apply with respect to California Guard Card or California PSO Card training or other training performed by an employee online. Employees shall be entitled to rest ·breaks as required by law. On a case by case basis, the Employer may, in its discretion, provide employees with disabilities travel time accommodations to and from lunch or a rest break. There is no guarantee for greater than a four (4) hour shift. Sunday through Saturday shall constitute a work week.

Lee Decl**., Exh. A**, pp. 9-10.)

**Section Nine - Wages**

If any employee is required or instructed to wear a uniform or any specifically designated article of clothing or footwear (other than standard street shoes), the Employer shall be responsible for furnishing them to the employee. The employee is responsible for maintaining all furnished apparel in a satisfactory condition and may be required to pay a refundable deposit of Seventy Five Dollars ($75.00). The Employer agrees to comply with all applicable laws, if any, with respect to cleaning furnished apparel. Employees may be required to perform work outside of the normal duties and responsibilities of security personnel at the discretion of the Employer from time to time in situations involving an emergency or in the case of an infrequent event. Employer shall exercise reasonable efforts to provide employees with discount parking options when coming to work at the Ballpark.

(Lee Decl., **Exh. A**, pp. 10-11.)

**Section Four - Qualification for Employment**

All Regular and Supervisory Employees shall be required to obtain and maintain a valid "California Guard Card" and thereafter maintain a valid California Guard Card (the "California Guard Card Requirement")…

[…]

The Employer shall pay or reimburse employees for the costs of such employee's application fee, enrollment in a California Guard Card or California PSO Card course, as applicable, and the required background check. The Employer will also pay each employee his, her or their standard rate of pay for the required hours spent by that employee in training and taking the exam. The Employer will offer a California Guard Card or California PSO Card course, as applicable and/or designate a particular California Guard Card or California PSO Card course or courses for employees to enroll to satisfy this requirement. Employees may satisfy the California Guard Card

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

Requirement or the California PSO Requirement by taking any course, but will not be eligible for reimbursement of the costs unless they are enrolled in a course specifically authorized by the Employer.

(Lee Decl., **Exh. A**, pp. 5-7.)

**Exhibit A – Wages and Premiums**

1. Graveyard Shift Premium. Each employee that works the Graveyard Shift shall be entitled to receive One Dollar and Fifty cents ($1.50) per hour more than the hourly wage set forth in his, her or their applicable classification above ("Graveyard Shift Premium"). The Graveyard Shift is defined as from 12:00AM to 8:00AM. The Employer reserves the right to modify the definition of Graveyard Shift at its discretion (e.g., from 10:00PM to 6:00AM or 11:00PM to 7:00AM). For employees working hours that may overlap with the Graveyard Shift but who are not working the Graveyard Shift in its entirety, the employee shall only receive the Graveyard Shift Premium for those hours during the established Graveyard Shift. For example, an employee currently working from 10:00PM to 6:00PM shall earn the Graveyard Shift Premium for only the hours worked between 12:00AM and 6:00AM and earn the regular wage from the hours of 10:00PM to 12:00AM.

2. Specialty Position Premium. With the exception of Supervisory Employees, any other employee who works as a Gate Coordinator, Home Clubhouse Guard, at the Lincoln 1 Post or dispatch positions (collectively, the "Specialty Positions") shall be entitled to receive One Dollar ($1.00) per hour more than the hourly wage set forth in his, her or their applicable classification above (the Specialty Position Premium"). The Employer shall have the exclusive right to determine the job functions and criteria for Specialty Positions and shall have the exclusive right to determine which individuals shall be scheduled for the Specialty Positions.

3. Post-Season Premium. Employees who work on the day of post-season baseball games (12:00AM to 11:59PM of the day such game is played) shall be entitled to receive premium pay of time and one-quarter (1.25 multiplied by their applicable rate of pay) for all National League Division Series games, time and one-half (1.5 multiplied by his, her or their applicable rate of pay) for all National League Championship Series games and time and three-quarters (1.75 multiplied ] by his, her or their applicable rate of pay) for all World Series Games ("Post-Season Premium") for the time worked. Employees are not entitled to receive any Post-Season Premium for any Wild Card Playoff Game.

(Lee Decl., **Exh. A**, pp. 19-20.)

This is a non-exhaustive list of the CBA provisions that create and/or govern the rights and privileges that Plaintiff has placed at issue in the Complaint. One could review every job classification, and every calendar year, in the wage appendix to the CBA (Lee Decl., at **Exh. A** at pp. 19), and it is apparent that all contractual rates of pay are in excess of 130% of the California minimum wage each year. Accordingly, Plaintiff's claims are subject to Labor Code exemption and interpretation and, thus, preemption under the LMRA applies to create federal question jurisdiction allowing for removal here.

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

## V. LEGAL DISCUSSION

Plaintiff pleads ten causes of action, all styled as state law claims involving violations of wage and hour provisions of the California Labor Code, and Unfair Competition Law ("UCL"). Plaintiff's overtime and seventh day of rest claims are preempted under Section 301 because such claims are necessarily contractual claims under the CBA as California state law does not apply to such claims because of an express exemption in the Labor Code. Plaintiff's derivative claims (for penalties for failure to pay all wages under Labor Code Section 204 and 210, waiting time penalties under Labor Code Section 203, inaccurate wage statements, and restitution under the UCL) are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) claims. Plaintiff's minimum wage and unreimbursed expense claims are also preempted by Section 301 because the resolution of such claims requires interpretation of the CBA; or, in the alternative, because the Court has supplemental jurisdiction over these claims, which form part of the same case or controversy as Plaintiff's preempted claims. Thus, this action is preempted by Section 301.

### A. The Section 301 Preemption Analysis – Legal Standard.

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

Section 301 preemption furthers two important federal policies. First, it ensures that the interpretation of collective bargaining agreements remains uniform and independent of state law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) (inconsistent interpretations would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements"). Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988). This Court has subject matter jurisdiction over—and thus a defendant may properly remove—any

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

ostensible state law claim preempted by Section 301. *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1, 24 (1983); *Allis-Chalmers Corp.*, 471 U.S. at 220 (if preempted, the "claim must either be treated as a § 301 claim ... or dismissed").

Step One. Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotations omitted). Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the Section 301 preemption inquiry is resolved at this first step. This is because, in the case of a state law meal break claim (for example), if Labor Code Section 512(a) does not apply (due to the application of the Labor Code Section 512(e)-(g) CBA exemption), any pleaded meal break claim is necessarily a contractual claim. *See, e.g., Giles v. Canus Corp.*, 2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022) (applying *Curtis*).

Step Two. If, and only if, there is no preemption found at the first step of the analysis, courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153. Under this second step, where there is no applicable CBA exemption, Section 301 preemption still applies if the resolution of a plaintiff's minimum wage claim (for example) requires interpretation of the CBA. *See Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1014 - 1016 (C.D. Cal. Sep. 2, 2022) (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27."); *Giles, supra,* 2022 WL 3370793, *6 (holding minimum wage claim preempted because resolving that claim would require an interpretation of terms "actual time worked" and "show-up pay" as used in the CBA).

Notably, whether Plaintiff's operative pleading mentions the CBA is not relevant to the Section 301 preemption analysis. *Curtis*, 913 F.3d at 1152; *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021); *Mellon*, 2022 625 F. Supp. 3d 1007, 1012; *Ayon v. Zero Waste Sols., Inc*, 2021 WL 4065716, *3 (E.D. Cal. Sept. 7, 2021).

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

**B. Plaintiff's Second and Third Cause of Action For Overtime Are Preempted Under *Curtis* Step One.**

In Plaintiff's Second Cause of Action, Plaintiff asserts that "Plaintiff and the other Class Members regularly worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week, and/or in excess of seven (7) consecutive days in a workweek." (Mertes Decl., **Exh. 1**, Complaint, ¶ 44.) Plaintiff further alleges that Defendants "intentionally and willfully failed to pay all overtime wages owed to Plaintiff and the other Class Members." (*Id.*) Similarly, in his Third Cause of Action, Plaintiff alleges that Defendant failed to pay overtime because it "intentionally and willfully required Plaintiff and other Class Members to work for periods of seven days straight without on day of rest without properly compensating Plaintiff or the other Class Members…" (*Id.* at ¶ 51.) However, Plaintiff has no valid state law overtime claim because the Labor Code Section 514 exemption applies. Section 514 provides an overtime exemption where "an employee [is] covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

First, the CBA provides for a range of wages, hours, and working conditions. (*See* provisions quoted in Sections IV.B.1, IV.B.3, and IV.B.5 *supra*.)

Second, the CBA provides premium wage rates for all overtime hours worked. (*See* provisions quoted in Section IV.B.2, *supra*.)

Third, the CBA provides hourly rates of pay well in excess of 30 percent above the then-current California minimum wage. (*See* Section IV.B.1, *supra*.)

Accordingly, the Section 514 overtime exemption, which has been construed and applied broadly by state and federal courts, clearly applies here. S*ee Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (where Section 514's requirements are met, an employer is only required to pay for overtime as defined by the collective bargaining agreement and Section 510 simply does not apply); *Curtis*, 913 F.3d at 1154-55 ("While section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage

protections through the collective bargaining process'") (*citing Vranish*; *quoting Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)).

Where, as here, the Section 514 exemption applies to a union-represented plaintiff, the "right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g., Giles*, *supra,* 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022); *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1153-55); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015) (same).

### C. Plaintiff's First Cause Of Action (Minimum Wages) Is Preempted Under *Curtis* Step One and Step Two.

Plaintiff's First Cause of Action is preempted because the claim arises out of Plaintiff's preempted overtime claim and requires interpretation of the CBA. Even if it were not preempted, the Court would have supplemental jurisdiction over this claim.

Plaintiff alleges that he and putative class members "regularly worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, in excess of forty (40) hours in a week, and/or in excess of seven (7) consecutive days in a workweek." (Mertes Decl., **Exh. 1**, Complaint, ¶ 44.) Plaintiff further alleges that he and putative class members were "subjected to numerous work periods where they were not afforded one day's rest in seven." (*Id.* at ¶50.) Finally, Plaintiff alleges that he and the putative class members "were frequently suffered or permitted to work "off-the-clock" prior to clocking in or after clocking out for their shifts." (*Id.* at ¶ 34.) Plaintiff does not allege that he ever worked or was scheduled for a day as to which overtime obligations would not attach ***if*** Plaintiff had worked more time than that for which he was paid (*e.g.*, Plaintiff does not allege that he ever worked less than 8 hours in a day). To the contrary, Plaintiff claims that he and other members of the putative class "regularly" worked in excess of eight (8) hours in a day, (12) hours in a day, forty (40) hours in a week, and/or in excess of seven (7) consecutive days in a workweek." (*Id.* ¶ 44.) In all respects, Plaintiff combines the alleged factual bases for his minimum wage and overtime claims, without differentiation. Collectively, the claims in Paragraphs 34, 44, and 50 of the Complaint, and the lack of any additional supporting detail in the First Cause of Action, make it clear that Plaintiff's so-called "minimum wage" claim is inseparable from

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

Plaintiff's overtime claim. Accordingly, Plaintiff's First Cause of Action, lacking any independent life is preempted for the same reason as Plaintiff's overtime claim. *See Chavez v. Smurfit Kappa N. Am. LLC,* 2018 WL 8642837, *4 (C.D. Cal Oct 17, 2018) (holding that a minimum wage claim, that could only arise out of plaintiff's preempted overtime claim, was also preempted under section 301); *see also Rodriguez*, *supra*, 2022 WL 161892, *6 ("because the claim for unpaid minimum wages substantially depends on an analysis of the CBA, the LMRA preempts the claim."); *Giles*, *supra*, 2022 WL 3370793, *6; *Mellon*, *supra,* 625 F. Supp. 3d at 1014.

In the alternative, Plaintiff's First Cause of Action is preempted under *Curtis* Step Two because interpretation of the various provisions of the CBA requiring pay for hours worked is required to resolve the minimum wage claim. By way of example, Section 8 (Hours) of the CBA details numerous provisions related to guaranteed pay, shift length, and travel pay that will require the interpretation of terms such as "required to work," "FVE," and "normal workday," among others. (*See* provisions quoted in Sections IV.B.3, and IV.B.5 *supra*.) Accordingly, the minimum wage claim is preempted under *Curtis* Step 2. *See Rodriguez*, *supra*, 2022 WL 161892, at *5 (finding, where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'"); *Giles*, *supra*, 2022 WL 3370793, at *6 (minimum wage claim preempted because resolving that claim would require interpretation of contractual terms "actual time worked" and "show-up pay"); *Mellon*, *supra*, 625 F. Supp. 3d 1007, 1014-1016 1014 (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks.")

In any event, if the Court finds that any portion of Plaintiff's First Cause of Action is not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims. *See Gay v. Pac Steel Grp*, 2021 WL 2917095, *3 (N.D. Cal Jun. 15, 2021) (finding supplemental jurisdiction for minimum wages, unpaid wages, non-compliant wage statements, and other claims when overtime, meal period, and rest period claims were preempted).

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

**D. Plaintiff's Derivative Waiting Time Penalty, UCL, And Wage Statement Claims (Sixth, Seventh, Eighth, and Tenth Causes Of Action) Are Preempted Under *Curtis* Step One.**

Plaintiff's Sixth Cause of Action (wages not timely paid during employment), Seventh Cause of Action (wage statements), Eighth Cause of Action (waiting time penalties under Labor Code Sections 201-203), and Tenth Cause of Action (restitution under UCL) are all, in whole or in part, derivative of Plaintiff's claims that are preempted under Section 301 for the reasons described above. (Mertes Decl., **Exh. 1**, Complaint) [all derivative claims are based on prior allegations in the Complaint].)

All of these derivative claims are preempted under Section 301 for this reason. *Giles*, *supra,* 2022 WL 3370793, *6-7; *Rodriguez*, *supra,* 2022 WL 161892, *6; *Mellon*, *supra,* 625 F. Supp. 3d 1007, 1014 ; *Jimenez v. Young's Mkt.* Co., 2021 WL 5999082, *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am*., 2019 WL 4543106, *4 (C.D. Cal. Jun. 7, 2019).

**E. Plaintiff's Labor Code Section 2802 Claim Is Preempted (Ninth Cause of Action) Under *Curtis* Step Two.**

Plaintiff vaguely alleges SFBA violated Labor Code Section 2802 as follows: "Plaintiff and the other Class Members incurred necessary business-related expenses and costs that were not fully reimbursed by Defendants." (Mertes Decl., **Exh. 1**, Complaint, ¶ 95.) Plaintiff's Complaint provides no further detail or information to support his purported claim for unreimbursed expenses.

Section 301 preemption applies to Plaintiff's Ninth Cause of Action because this "state law right is substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153. The case law provides ample guidance for a situation such as this, where a union-represented plaintiff makes broad and vague expense reimbursement allegations, and the applicable CBA contains a raft of relevant expense reimbursement provisions. *See, e.g., Rodriguez*, *supra* 2022 WL 161892, *4-5 (Section 301 preemption applied to expense reimbursement claims for, among other things, cell phone, mileage, and gas costs, and reasoning: "[T]he failure to pay business expenses … substantially depends on an analysis of the CBA. The plaintiff claims an entitlement to reimbursement for purchasing mandatory work uniforms, safety equipment, laundering uniforms, mileage and gas costs, use of cell phones, and tools. The CBA provides for reimbursable expenses for mileage and gas, and the terms about mileage and routes require analysis and interpretation. Similarly, … it provides for workers to furnish some equipment and the employer to

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

provide housing for certain equipment and safety equipment. It describes employees' entitlement to protective clothing and equipment if they work with caustic substances. Resolution of the claim turns on the analysis of the CBA and interpretation of its terms, and the LMRA thus preempts these claims that are substantially dependent on analysis of the CBA."); *Linebarger v. Graphic Packaging International, LLC*, 2020 WL 1934958, *6 (C.D. Cal. Apr. 22, 2020) (finding Section 301 preemption of cell phone expense reimbursement claim where CBA included language regarding the purchase of tools necessary to complete the work); *Gay v. Pac Steel Group,* 2023 U.S. Dist LEXIS at *20 (N.D. Cal Sept 15, 2023) (applying LMRA 301 preemption and holding that the CBA would need to be interpreted in order to decide [Plaintiff's] unreimbursed business expense claim).

In this regard, the CBA contains numerous provisions that provide expense reimbursement: Section 9 requires the Company to reimburse employees for certain uniforms and Section 4 requires the Company to reimburse employees for certain security guard training. (*See* provisions quoted in Section IV.B.5 *supra*.) As in *Rodriguez* and *Linebarger*, this claim is preempted by Section 301 because the resolution of Plaintiff's expense reimbursement claims requires interpreting and applying the various CBA provisions regarding expense reimbursement.

**H. The Court Has Supplemental Jurisdiction Over Plaintiff's Remaining Claims.**

If this Court finds that any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c), because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy. *See Giles*, *supra*, 2022 WL 3370793, *6 (court exercised supplemental jurisdiction over non-preempted rest break claim where overtime, meal break and minimum wage claims were preempted by Section 301); *Jimenez*, *supra*, 2021 WL 5999082, at *21 (exercising supplement jurisdiction because the plaintiffs' remaining claims of minimum wage, rest period, and unpaid wages "arose from the same working conditions and relationship" with the defendants during the same period as the plaintiffs' overtime and meal period claims).

## VI. NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, the undersigned is providing written notice of such filing to Sage

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940

Stone, Launa Blackstone Law, APC, Plaintiff's counsel of record. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Francisco. (Mertes Decl., ¶ 12.)

**VI. CONCLUSION**

For the reasons provided herein, Defendant hereby removes this action from the California Superior Court, in and for the County of San Francisco, to the United States District Court, Northern District of California. Defendant respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated: December 6, 2025

LITTLER MENDELSON, P.C.

*/s/ Courtney Chambers*
John C. Fish, Jr.
Courtney Chambers
Emily Mertes

Attorneys For Defendant
SAN FRANCISCO BASEBALL ASSOCIATES LLC

4917-5934-7830.2 / 018235.1083

LITTLER MENDELSON, P.C.
101 Second Street
Suite 1000
San Francisco, California 94105
415.433.1940